## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                          No. 21-CR-742-DHU

JULIO CHACON-GONZALES,

    Defendant.

## MEMORANDUM OPINION AND ORDER
## ON MOTIONS TO SUPPRESS

This matter is before the Court on Defendant's Motion to Suppress Evidence Based Upon Illegal Seizure and Search of Vehicle ("Illegal Seizure Motion") (Doc. 51) and Defendant's Motion to Suppress Evidence Based Upon Invalid Search Warrant ("Invalid Search Warrant Motion") (Doc. 76). The Government filed responses to both of Defendant's motions. Docs. 73 and 82. The Court held a hearing on the motions on August 21, 2023. *See* Docs. 84 and 96. Having considered the motions, briefs, record evidence, arguments, relevant law, and being otherwise fully informed, the Court concludes that both Defendant's Motion to Suppress Evidence Based Upon Illegal Seizure and Search of Vehicle (Doc. 51) and Defendant's Motion to Suppress Evidence Based Upon Invalid Search Warrant (Doc. 76) are **DENIED**.

## BACKGROUND

Defendant's Illegal Seizure Motion concerns the Albuquerque Police Department's ("APD") impoundment and search of Defendant's Dodge Ram truck in April 2021. During the search of the truck, APD found a firearm, ammunition, pills, drugs, and identification documents. Defendant contends the seizure and search of the vehicle were conducted in violation of the Fourth Amendment to the United States Constitution. Defendant moves this Court to suppress the

evidence found in the truck and any statements and other evidence that is the fruit of the seizure and search.

Defendant's Invalid Search Warrant Motion requests suppression of the items found in Defendant's truck based on the argument that the search warrant for the vehicle lacked probable cause. Defendant argues the search warrant lacked probable cause in two ways: 1) the warrant lacked a factual nexus between the vehicle to be searched and the alleged reason for the search (criminal sexual penetration and child exploitation) and 2) the warrant was based on stale information acquired over a year before the application for the search warrant.

## FACTUAL FINDINGS

The Court makes the following findings of fact, as supported by the record, in accordance with Rule 12(d) of the Federal Rules of Criminal Procedure.

In October 2020, Special Agent Christina Marquez of the Office of the Second Judicial District Attorney Crime Strategies Unit ("CSU") received a referral regarding a high-risk youth, J.C., who was 15 years old. Doc. 96, August 21, 2023 Motion Hearing Transcript ("Mot. Hr'g Tr.") at 30:8-19; *see also* Doc. 73-1 at 2.[1] At the time, Agent Marquez was assigned to work human trafficking and child exploitation investigations, which included working to identify and engage with high-risk youth. Mot. Hr'g Tr.. at 25:1-16. Upon receiving the referral, Agent Marquez learned that J.C. was in foster care and was reportedly in a relationship with Defendant, who was 47 years old at the time. *Id.* at 30:15-31:23.

In connection with the referral, Agent Marquez reviewed a police report for an incident related to J.C. and Defendant that occurred on October 3, 2020. Doc. 76-2 at 5, 7, Affidavit for

---

[1] Though Agent Marquez stated at the hearing that J.C. was 16 years old as of October 2020, Agent Marquez previously listed J.C.'s date of birth as May of 2005. *See* Doc. 73-1 at 2. Based on a birthdate of May 2005, it appears that J.C. was actually 15 years old at this point.

Search Warrant.  On October 3, 2020, the Albuquerque Police Department responded to an Albuquerque Motel 6 where they made contact with J.C., who was listed as a runaway from the custody of the Children, Youth and Families Department ("CYFD").  *Id.* at 7.  J.C. indicated she was staying at the hotel to hide from her "boyfriend"— Defendant. *Id.*  J.C. described suffering daily physical abuse by Defendant and officers observed visible bruising to her right leg. *Id.*  J.C. was returned to foster care but ran away shortly after her return. *Id.*

On March 7, 2021, law enforcement responded to the SureStay Hotel in Albuquerque following a report of vandalism. *Id.* Following additional investigation, including review of hotel surveillance, Agent Marquez learned that Defendant and J.C. had been residing at the hotel from February 14, 2021, through March 7, 2021. *Id.* at 8.

On March 19, 2021, Agent Marquez learned that members of the Albuquerque Police Department were dispatched to the Nativo Lodge in Albuquerque pursuant to a report of a naked female running around the property and threatening to harm herself and hotel staff.  *Id.*  Officers learned that there was a male, identified as Julio Chacon-Gonzales, in the room with the female. *Id.*  The female was identified as J.C.  *Id.*

When Agent Marquez arrived at the Nativo Lodge, she spoke with the APD officers who had been dispatched to the call.  Mot. Hr'g Tr. at 33:13-15.  The officers indicated that Defendant was the person who had rented the room, and hotel management told the officers that J.C. and Defendant had caused disruptions at the hotel, including leaving paraphernalia at the pool and breaking property in the room.  *Id.* at 33:15-21.

Agent Marquez then spoke with J.C. at the scene.  Doc. 76-2 at 9.  J.C. had severe bruising under both her left and right eyes. *Id.*  J.C. indicated she had known Defendant for approximately two years and that he assisted her with the reservation of hotel rooms around the Albuquerque

area. *Id.*  J.C. initially denied that she was in a sexual relationship with Defendant, but then she said she had had unprotected sex with Defendant two weeks prior. *Id.* at 10.  J.C. was returned to foster care but ran away the next day. *Id.*  On March 25, 2021, J.C. was found at another hotel with Defendant. *Id.*

As part of her investigation, Agent Marquez listened to jail calls between Defendant and J.C. from April 2020. *Id.* at 13.  During a call on April 4, 2020, Defendant indicated charges were being pressed against him, and J.C. questioned what those charges would be. *Id.*  Defendant then began talking to J.C. about the videos with her "boyfriend." *Id.* at 14.  J.C. said, "yeah, they're on my, I've never shown anybody." *Id.*  Defendant became upset and said, "Check your fucking phone for the videos that you made. Don't make me talk so much on this freaking phone. Okay erase it. Okay because if they come, that's the first thing they are gonna ask you for, for real. The video of me and you." *Id.*  J.C. then told Defendant that she had been messaging him on Facebook but that someone had been reading her messages and she believed it was the police. *Id.*  J.C. also told him that she sent the videos to him. *Id.*  Defendant said that he deleted the videos two days prior to coming into custody. *Id.*  During a call on April 24, 2020, Defendant told J.C. that his friends were calling him a "child molester" because he was with J.C., a minor. *Id.* at 15.

On April 6, 2021, Agent Marquez received and reviewed Facebook records from an account belonging to J.C. *Id.* at 12.  In the records she observed a video of J.C. and Defendant engaging in sexual acts. *Id.* at 13.  The video was uploaded to J.C.'s Facebook account on March 30, 2020. *Id.*  The exact date or time the video was created is unknown. *Id.*  However, Defendant was incarcerated on March 27, 2020, so based on the upload date and the fact of the recorded jail call on April 4, 2020, Agent Marquez reasoned that the video had been created sometime before

March 27, 2020.  *Id.* at 15.  In March 2020, J.C. would have been 14 years old and Defendant would have been 46 years old.  *See* Doc. 73 at 3; *see also* Mot. Hr'g. Tr. at 38:2-7-10.[2]

Based on the information she had obtained, Agent Marquez applied for a warrant to arrest Mr. Chacon-Gonzales.  Mot. Hr'g Tr.. at 41:15-22.  On April 12, 2021, a state Metropolitan Court judge issued an arrest warrant. *See* Doc. 73-1 at 1, Warrant for Arrest.  The warrant only authorized an arrest.  *Id.*  It did not authorize any impoundment or search of Defendant or his property. *See id.*  The arrest warrant for Defendant was for criminal sexual penetration of a minor, sexual exploitation of children, and contributing to the delinquency of a minor. *Id.*  In support of this arrest warrant, Agent Marquez authored a complaint affidavit that summarized her investigation to date as well as her discovery and review of the video. Doc. 76-1 at 1-7, Arrest Warrant Affidavit.

On April 15, 2021, New Mexico State Police ("NMSP") began conducting surveillance on Defendant.  Mot. Hr'g Tr. at 43:17-25.  NMSP located Defendant operating a 2008 black Dodge Ram truck onto the property of 347 California Street SE. *Id.* at 43:24-44:-3.  Defendant stayed at that address for approximately fifteen minutes before leaving. *Id.* at 44:3-6.  Officers believed Defendant was the sole occupant of the vehicle, though it was hard for them to be certain because the windows were tinted.  *Id.* at 44:7-15.

Defendant left the tow yard and law enforcement followed him to a nearby apartment complex located at 124 Pennsylvania St. SE. *Id.* at 44:16-23, 45:2-4.  Law enforcement detained and arrested Defendant after he exited his vehicle, based on his active state arrest warrant. *Id.* at 44:19-45:1. After arresting Defendant, agents checked the vehicle to make sure there were no other occupants.  *Id.* at 45:20-24.  The officers did not search the vehicle at this time. *Id.* at 46:18-47:2.

---

[2] Agent Marquez testified that J.C. would have been 15 years in March 2020, but based on a birthdate of May 2005, the Court concludes, as the Government does in their brief, that J.C. would have been 14 years old in March 2020. *See* Doc. 73 at 3.

Agent Marquez then ordered that the vehicle be sealed and towed pending a search warrant for the vehicle. *Id.* at 45:23-25.  The vehicle was sealed and towed.  *Id.* at 47:11-19.

Defendant was transported to the NMSP station for an interview. *Id.* at 48:15-17.  Agent Marquez's partner, Agent Maria Rael, obtained a search warrant for the vehicle.  *Id.* at 12-13; *see also* Doc. 73-3 at 1, Search Warrant.  The affidavit for the search warrant included the facts Agent Marquez learned during her investigation, including but not limited to those described above.  *See* Doc. 76-2.  The affidavit included information that the truck was seen driven by Defendant on March 19, 2021 and March 25, 2021.  *Id.* at 15.  The affidavit also included information about the affiant's training and experience related to the intersection between electronic devices and crimes involving the sexual exploitation of children, including information about how child pornography is stored on portable devices. *See* Doc. 76-2 at 16-26.  Agent Marquez executed the warrant that same day, April 15, 2023 at 3:47 p.m. Doc. 73-3 at 2.

Law enforcement located and seized the following items from the truck:

- Electronic devices;
- A black Mossberg firearm;
- A magazine with seven rounds of ammunition;
- Two quart-sized zip-lock bags containing methamphetamine;
- One clear bag containing 1,565 fentanyl pills;
- U.S. currency totaling $3,907;
- A digital scale;
- Plastic baggies;
- Black gloves; and
- One lighter.

*Id.*  Defendant moves to suppress all of the evidence seized from the truck, as well as any other evidence that is the fruit of the seizure and search.

## LEGAL FRAMEWORK

### A.  Fourth Amendment Principles

The Fourth Amendment guarantees a person's right to be free from "unreasonable searches and seizures."  U.S. Const. amend. IV.  The exclusionary rule prohibits introduction of evidence directly obtained by a violation of the Fourth Amendment and evidence that is "the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search, up to the point at which the connection with the unlawful search becomes 'so attenuated as to dissipate the taint.'"  *Murray v. United States*, 487 U.S. 533, 536-37 (1988) (quoting *Nardone v. United States*, 308 U.S. 338, 341 (1939)); *see also Wong Sun v. United States*, 371 U.S. 471, 484 (1963) ("The exclusionary prohibition extends as well to the indirect as the direct products of [Fourth Amendment] invasions.").

A defendant may move to suppress evidence that is "fruit of the poisonous tree." *See Wong Sun*, 371 U.S. at 485.  To prevail, a defendant must first "demonstrate that his Fourth Amendment Rights were violated."  *United States v. Torres-Castro*, 470 F.3d 992, 999 (10th Cir. 2006), *cert. denied*, 550 U.S. 949 (2007).  Then, he must show "a factual nexus between the illegality and the challenged evidence."  *Id.* (citation omitted).  "In order for a defendant to meet his burden of showing a factual nexus, he must, [a]t a minimum ... adduce evidence at the suppression hearing showing the evidence sought to be suppressed would not have come to light *but for* the government's unconstitutional conduct [directed toward that complaining defendant]."  *United States v. Ladeaux*, 454 F.3d 1107, 1111 (10th Cir. 2006) (alterations in original; citation omitted).

Once a defendant makes these showings, the government must "prove that the evidence sought to be suppressed is not fruit of the poisonous tree."  *United States v. Mosley*, 743 F.3d 1317, 1323 (10th Cir. 2014) (internal quotation marks and citation omitted).  When a motion to suppress involves a warrantless search, "the government has the burden of proving its warrantless actions were justified." *United States v. Goebel*, 959 F.3d 1259, 1265 (10th Cir. 2020) (citation omitted).

In presiding over a motion to suppress, "the district court must assess the credibility of witnesses and determine the weight to give to the evidence presented; the inferences the district court draws from that evidence and testimony are entirely within its discretion." *Id.*

### B. Impoundments and Seizures in Anticipation of a Warrant

The government bears the burden of proving that its impoundment of a vehicle satisfies the Fourth Amendment. *United States v. Sanders*, 796 F.3d 1241, 1244 (10th Cir. 2015 (citing *United States v. Ibarra*, 955 F.2d 1405, 1409 (10th Cir. 1992)). In *Sanders*, the Tenth Circuit discussed the two main lines of case law from the United States Supreme Court on this subject.

In *South Dakota v. Opperman*, 428 U.S. 364 (1976), the Supreme Court held that police officers have the authority to impound a vehicle without a warrant when the impoundment is required by the community-caretaking functions of "protecting public safety and promoting the efficient movement of traffic." *Sanders*, 796 F.3d at 1245. The *Opperman* Court explained:

> In the interests of public safety and as part of what the Court has called community caretaking functions, automobiles are frequently taken into police custody. Vehicle accidents present one such occasion. To permit the uninterrupted flow of traffic and in some circumstances to preserve evidence, disabled or damaged vehicles will often be removed from the highways or streets at the behest of police engaged solely in caretaking and traffic-control activities. Police will also frequently remove and impound automobiles which violate parking ordinances and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic. The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge.

428 U.S. at 368–69.

Although *Opperman* gives officers broad authority to impound vehicles under the community-caretaking rationale, this authority is not unlimited. In *United States v. Pappas*, 735 F.2d 1232 (10th Cir. 1984), the district court granted a defendant's motion to suppress after police impounded the defendant's vehicle from a private lot based on a policy that required impoundment "whenever an arrest takes place, regardless of the circumstances." *Id*. at 1233. In affirming the

8

suppression, the Tenth Circuit stated, "*Opperman* cannot be used to justify the automatic inventory of every car upon the arrest of its owner. The justifications for the rule are too carefully crafted for this to be the intent." *Id*. at 1234. The Court also noted that unlike in *Opperman*, where the owner of the illegally-parked vehicle was "not present to make other arrangements," in *Pappas* there were other alternatives the police could have pursued, such as speaking to the defendant's friends, inquiring if the owner of the bar would allow the car to be left in place, or placing a call to the defendant's family. *Id*.

While *Opperman* instructs that certain impoundments justified by a legitimate community-caretaking rationale are constitutional, a second line of Supreme Court cases indicates that impoundments are unconstitutional if they are not guided by standardized criteria and are pursued as a pretext for further criminal investigation. *Sanders*, 796 F.3d at 1245 (citing *Illinois v. Lafayette*, 462 U.S. 640 (1983)) and *Colorado v. Bertine*, 479 U.S. 367 (1987)).

The *Sanders* Court sought to clarify the status of a third category of impoundments: "those carried out pursuant to standardized criteria but not justified by the public safety and traffic control goals of *Opperman*." *Sanders*, 796 F.3d at 1245. The Tenth Circuit concluded:

> After surveying Supreme Court and Tenth Circuit precedent as well as persuasive authority from other circuits, we hold that when a vehicle is not impeding traffic or impairing public safety, impoundments are constitutional only if guided by both standardized criteria and a legitimate community-caretaking rationale. We conclude that the impoundment at issue in this case is unconstitutional for two reasons: it was not guided by standardized criteria, and was not justified by a legitimate community-caretaking rationale. Under our holding, either failure alone would be sufficient to establish unconstitutionality.

*Sanders*, 796 F.3d at 1242–43.

Importantly, there is yet another category of caselaw that relates to the seizure of vehicles. The United States Supreme Court has held that the police may seize and tow a vehicle, if they have probable cause, while they secure a search warrant. *Chambers v. Maroney*, 399 U.S. 42, 52 (1970)

("For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment."); *see also Segura v. United States*, 468 U.S. 796, 807 (1984) (describing *Chambers* as having held that "it was reasonable to seize and impound an automobile, on the basis of probable cause, for 'whatever period is necessary to obtain a warrant for the search.'").

### C. Probable Cause

"An affidavit establishes probable cause for a search warrant if the totality of the information it contains establishes the fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Roach*, 582 F.3d 1192, 1200 (10th Cir. 2009) (quoting *United States v. Soderstrand*, 412 F.3d 1146, 1152 (10th Cir. 2005)). "The affidavit must show a nexus between suspected criminal activity and the place to be searched, and a court may not arrive at probable cause simply by piling hunch upon hunch." *Id.* (internal quotation marks and citations omitted). "[R]eviewing courts will not defer to a magistrate's determination if the affidavit provides no substantial basis for determining the existence of probable cause." *United States v. $149,442.43*, 965 F.2d 868, 872 (10th Cir. 1992) (citing *United States v. Leon*, 468 U.S. 897, 915 (1984)).

Significantly, the Tenth Circuit does not require a warrant affidavit to have a precise statement regarding the objects to be seized and the place to be searched. In *United States v. Hargus*, the Tenth Circuit stated that "[a] nexus between the objects to be seized and the place to be searched for them is established when the circumstances set out in the affidavit would warrant a person of reasonable caution to believe that the articles sought would be found at the place to be

searched." 128 F.3d 1358, 1362 (10th Cir. 1997). "There need not be direct evidence or personal knowledge that the items sought are located at the place to be searched, and we have recognized that courts often rely on the opinion of police officers as to where contraband may be kept." *Id.* "In making the probable cause determination, the issuing magistrate may draw reasonable inferences from the materials provided in the warrant application." *United States v. Rowland*, 145 F.3d 1194, 1205 (10th Cir. 1998).

### D. Staleness

Probable cause "cannot be based on stale information that no longer suggests that the item sought will be found in the place to be searched." *United States v. Shomo*, 786 F.2d 981, 983 (10th Cir. 1986). "The basis of the staleness doctrine is the notion that probable cause dissipates with the passage of time." *United States v. Miles*, 772 F.2d 613, 616 (10th Cir. 1985) (citing *United States v. Johnson*, 461 F.2d 285, 287 (10th Cir. 1972)). Whether information in an affidavit supporting a search warrant is stale depends on "the nature of the criminal activity, the length of the activity, and the nature of the property to be seized." *United States v. Iiland*, 254 F.3d 1264, 1268–69 (10th Cir. 2001) (citing *United States v. Snow*, 919 F.2d 1458, 1459–60 (10th Cir. 1990) (citations omitted). In child pornography cases in particular, the Tenth Circuit has rejected staleness challenges when information provided in search warrants was 107 days old (*see United States v. Haymond*, 672 F.3d 948 (10th Cir. 2012)), 111 days old (*see United States v. Perrine*, 518 F.3d 1196 (10th Cir. 2008)), and five years old (*see United States v. Riccardi*, 405 F.3d 852 (10th Cir. 2005)).

With this legal framework in mind, the Court now turns to the parties' arguments in this matter.

**DISCUSSION**

**I.   Seizure of Vehicle Pending Warrant**

Defendant argues suppression is warranted because the impoundment of his vehicle "was not for any viable community caretaking rationale nor any reasonable non-pretextual reason." Doc. 51 at 5.  He argues his vehicle was parked on private property, in a parking spot, not blocking traffic, and it did not pose a threat to public safety.  *Id*. at 7.  Therefore, there was no justification to impound and tow the truck "outside of using it as a pretext to conduct an illegal search."  *Id*. Defendant also argues the impoundment was not conducted pursuant to any standardized policy, nor was it justified by any legitimate community caretaking purpose as described in *Sanders*.  *See id*. at 7-10.  The truck was legally parked on private property, the police did not consult Defendant about removal of the vehicle, and though Defendant asked if he was going to be able to make a phone call, the police answered in the affirmative, but did not ever give him an opportunity to call someone to pick up the truck.  *Id*.  at 10.  Lastly, Defendant argues that all evidence seized as a result of the seizure of the truck, including Defendant's statements, must be suppressed as fruit of the poisonous tree because "but for the illegal impoundment, the government would never have come across evidence gathered from inside the Dodge Ram truck."  *Id*.

The Government argues that "Defendant invokes the wrong doctrine in his request for relief" because "the Supreme Court has expressly sanctioned law enforcement's actions here." Doc. 73 at 7.  The Government argues:

> the analysis is different depending on whether a vehicle is towed for impoundment purposes or seized and towed in anticipation of a warrant. In his Motion, Defendant relies on the community-caretaking rationale of *United States v. Sanders*, 796 F.3d 1241 (10th Cir. 2015). This reliance is misplaced, however, because *Sanders* only addresses "the constitutionality of a decision to impound a vehicle based on a community-caretaking justification." 796 F.3d at 1242. The Supreme Court has held that it is permissible to seize a car while securing a search warrant. *Chambers v. Maroney*, 399 U.S. 42, 52 (1970) ("For constitutional purposes, we see no

difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment."); *see also Segura v. United States*, 468 U.S. 796, 807 (1984) (describing *Chambers* as having held that "it was reasonable to seize and impound an automobile, on the basis of probable cause, for 'whatever period is necessary to obtain a warrant for the search.'").

Doc. 73 at 6. The Government's argues, under *Chambers* and *Segura*, "law enforcement may seize a car in anticipation of a search warrant—it makes no difference whether a vehicle is on private or public property if it is being towed for evidentiary purposes." Doc. 73 at 7. The Government asserts:

> law enforcement did precisely the right thing under these circumstances—they stayed with the car in order to ensure the integrity of any evidence inside, sealed it, towed it, and promptly obtained a search warrant, which was executed within hours of Defendant's arrest. Although Defendant points to the vehicle's location on private property as grounds for suppression, his argument is misplaced because there was no exercise of the community-caretaking function and no inventory search completed. *Sanders* therefore does not apply.

*Id*. In light of this, the Government requests that the Court deny Defendant's Motion. *Id*.

The Court finds that law enforcement's seizure of Defendant's vehicle was lawful. The Government has persuaded the Court that, under *Chambers*, police are permitted to seize and tow a vehicle in anticipation of securing a search warrant if the police have probable cause to search, which is what occurred here. This was not a community-caretaking impoundment, therefore, the seizure was lawful so long as there was probable cause to search, which the Court finds there was, as explained below.[3]

---

[3] On December 6, 2023, Defendant filed a supplemental exhibit in support of his motions to suppress (Doc. 101). Defendant provided the Court with an exhibit that "was provided by the government after the suppression hearing." *Id*. at 1. Defendant argues:

> This exhibit is relevant to the Motions Motions to Suppress because it shows that law enforcement agents may have sought to obtain drug evidence against Mr. Chacon-Gonzales before executing his arrest for alleged sex offenses. It was the New Mexico State Police Narcotics Unit that was solicited for help in the arrest of Mr. Chacon-Gonzales before he was arrested. Additionally, the newly disclosed reports show that members of the New Mexico State Police Department identified Mr.

## II.   Probable Cause

The Court agrees with the Government that there was a substantial basis for the state judge who reviewed the search warrant application to find probable cause for the issuance of the warrant. The supporting affidavit includes critical information about the child exploitation investigation, including that in a jail call, Defendant and J.C. discussed the existence of multiple videos. Significantly, J.C. told Defendant that she had sent the videos to Defendant, and Defendant said he had deleted the videos two days prior to entering custody.  The affidavit also indicates that the police were seeking any type of electronic device that could contains these videos, and it details how cellular phones can be used to create and store videos.

As the Government points out, the Tenth Circuit has held that, "There need not be direct evidence or personal knowledge that the items sought are located at the place to be searched, and we have recognized that courts often rely on the opinion of police officers as to where contraband may be kept." *Hargus*, 128 F.3d at 1362.  The affidavit contained a statement of the types of digital media used to commit child exploitation offenses and set forth probable cause as to why the police believed that digital devices, including a cellular phone, would be found in Defendant's vehicle.  Under the heading "Affiant's Experience and Training and Why and Where we Want to Search," the affiant detailed computers, electronic storage devices, and electronic files, and states a request to seize and search electronic files that may be on a number of devices, including a cellular phone. The affiant included additional information as well, including: information about deleted files and the possibility of recovering such data, information about people maintaining

---

Chacon-Gonzales immediately upon seeing him at his place of employment (California Street tow yard), but did not immediately execute the arrest warrant. Rather, the agents elected to follow Mr. Chacon-Gonzales in his vehicle presumably in an effort to capture and search his vehicle.

*Id.* at 1-2.  The Court has reviewed the exhibit and concludes that it does not change the Court's finding in this case that, under *Chambers*, police are permitted to seize and tow a vehicle in anticipation of securing a search warrant if the police have probable cause to search, and that there was probable cause to search here.

electronic devices for long periods, information about electronic devices and child pornography, information about USB flash drives, data storage capabilities, use of the internet in such investigations, and more. Importantly, the affidavit also detailed the portability of electronics. Defendant was also seen driving the particular truck two time prior to the date of the warrant application.  In considering the totality of the circumstances, the affidavit established probable cause and showed a sufficient nexus between the suspected criminal activity and the place to be searched.  Therefore, Defendant's requests to suppress based on a lack of factual nexus and illegal seizure of the vehicle must be denied.

### III.   Staleness

Finally, Defendant argues that the facts supporting the issuance of the search warrant were stale and could not provide any legitimate justification for a search of the Dodge Ram truck a year after the video was uploaded to Facebook in March 2020.  *See* Doc. 76 at 10-14.  Defendant argues there is no evidence that criminal conduct continued after March 2020, over twelve months elapsed between the upload date and the application for the search warrant, the search warrant affidavit mostly speaks of events that occurred at least several months prior to the warrant application, and there was no reason to believe that the truck contained any evidence of any crime.  *See id.* at 13-14.

The Government argues in response that the nature of the crime alleged here counsels in favor of finding that the information in the warrant was not stale. The Government argues that the Tenth Circuit has rejected multiple staleness challenges in child pornography cases when information provided in search warrants was 107 days old (*see United States v. Haymond*, 672 F.3d 948 (10th Cir. 2012)), 111 days old (*see United States v. Perrine*, 518 F.3d 1196 (10th Cir. 2008)), and five years old (*see United States v. Riccardi*, 405 F.3d 852 (10th Cir. 2005)).

The Government has persuaded the Court that Defendant's argument here must be rejected based on the existing case law.  While it is true that 381 days passed between when J.C. uploaded the video to Facebook and the search of the vehicle, given the nature of the crimes suspected, the Court finds that Defendant has not shown that the information in the warrant was so stale as to render the warrant lacking in probable cause.  The police had reason to believe that they would be able to recover additional videos from Defendant's digital devices because Defendant and J.C. had referred to multiple videos on a jail call, but law enforcement had so far only recovered one video, and even deleted videos can be recovered.  *See* Doc. 76-2 at 19 (affiant indicates her examination of seized digital devices will include "viewing and/or printing deleted files").    Finally, the Tenth Circuit cases offered by the Government indicate that, for crimes involving child pornography, the Circuit tolerates the use of relatively old information in warrants.  Therefore, the Court concludes that Defendant's request to suppress the evidence in this case based on staleness will be denied.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Suppress Evidence Based Upon Illegal Seizure and Search of Vehicle (Doc. 51) and **DENIES** Defendant's Motion to Suppress Evidence Based Upon Invalid Search Warrant (Doc. 76).

**IT IS SO ORDERED.**

_____
DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE